IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


**GENEATH WILLIAMS,**

    Plaintiff,

vs.                                                CASE NO. 5:06CV221-RS/AK

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**

    Defendant.

_____/


## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

### A. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on August 20, 2003, alleging a disability onset date of December 1, 2001, because of back pain, depressive disorder, history of colon cancer, carpal tunnel syndrome and seizure disorder. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on February 27,

2006, and entered an unfavorable decision on June 8, 2006.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

## B.     FINDINGS OF THE ALJ

The ALJ found that Plaintiff had severe impairments of back pain and depressive disorder, but that these impairments did not meet the listings.  Her other conditions of history of colon cancer, carpal tunnel syndrome, and seizure disorder were not severe.  Thus, the ALJ found that Plaintiff "has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently.  She can push/pull within these weights with the upper and lower extremities, but not on a repetitive basis.  She can sit, stand and/or walk, about six hours each, as needed in an eight-hour workday, with normal rest and meal breaks about every two hours.  The claimant can never kneel or crawl and she can only occasionally stoop and crouch.  She should avoid exposure to extreme weather, extreme cold, heat and wetness and/or humidity.  She should avoid moving/mechanical parts, electrical shock and exposed heights.  The claimant's mental impairment limits her to the performance of simple, repetitive types of jobs, which are not quota-based or on a production schedule.  She cannot carry out detailed instructions or make complex decisions.

The ALJ found her allegations partially supported by the record, but her allegations concerning the intensity, duration and limiting effects were not entirely credible.  The ALJ found that her seizures and headaches were well controlled with medication and her back pain was being treated conservatively with some relief.  He

**No. 5:06CV221-RS/AK**

also noted that she was not cooperative at the consultative examination and appeared to present herself as more limited than she was.

The ALJ found that her colon cancer did not last a continuous 12 months, did not result in any significant residuals, and is therefore not severe. He also found that her seizure disorder was controlled with medication, but that she should avoid working around dangerous machinery or at heights. The ALJ also found that the medical evidence did not support a finding that her carpal tunnel syndrome or leg numbness and tingling were severe. As for Plaintiff's back pain, the ALJ found that the objective evidence did not support a "debilitating" level of pain. Plaintiff herself had described her pain at a level 3 out of 10, and had recently presented herself at a consultative examination as being more limited than the examiner believed her to be. Also, she reported to her own physician no side effects from her medication, but appeared drowsy and lethargic at a CE, even falling asleep during it. At the hearing Plaintiff complained only of the physical pain as limiting her ability to work and did not complain of any limitations caused by the depression. Nonetheless, the non-examining physicians who assessed her daily functional capacity agreed that she suffered from mild limitations because of her depression, which would moderately limit her ability to concentrate. Because these non-exertional limitations preclude a full range of light work, a vocational expert was called to testify and found that there were a number of jobs Plaintiff could perform in the sedentary, unskilled level of work such as charge account clerk, order

**No. 5:06CV221-RS/AK**

clerk, document preparer, traffic checker, mailer, and yardage control clerk. As such, she was not disabled.

## C. ISSUES PRESENTED

Plaintiff argues that the ALJ erred in not giving proper weight to Plaintiff's subjective complaints of pain; that the ALJ erred in not considering the side effects of her medication; that the ALJ erred in posing hypothetical questions to the vocational expert and then not relying on the testimony elicited by those questions.

The government responds that the ALJ considered and expressly rejected Plaintiff's subjective complaints of pain because the objective evidence (MRI, x-ray, EMG studies, and CE examination) did not support the levels of pain she reported. Further, there was only conservative treatment suggested.

Except for Plaintiff's behavior at the CE on January 9, 2004, Plaintiff reported several times to her treating physicians no side effects from her medication. When she told Dr. Saleh that the Depakote (for seizures) made her sick, he adjusted it downward and she later reported no side effects.

The ALJ posed several hypotheticals to the VE, but chose the response to a hypothetical which included the limitations the ALJ found credible and supported by the record. (See R. 343).

The issue thus presented is whether the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**No. 5:06CV221-RS/AK**

**D.     STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an

adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him

**No. 5:06CV221-RS/AK**

from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

### E.   SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

Plaintiff's colon cancer was discovered in December 2001, surgery was performed, and a regimen of chemotherapy was begun.  (R. 196-208, 214-215).

Treatment with Dr. Patel began on February 20, 2003, after she completed her chemotherapy.  (R. 110).  He treated her for anxiety (subsequent to marital separation), low blood pressure, post-surgery for colon cancer, depression, and some gynecological issues not relevant to her disability.  (R. 104-111).  In the last examination on October 31, 2003, she reported no side effects with her medication and pain in her joints, predominantly in her hands.  (R. 104).

A consultative examination on January 9, 2004, with Dr. Gilani, found her to be non-cooperative, "acting as [sic] she is hurting very badly and if she is in severe acute pain." (R. 113).  She did not report any seizures and she did not report taking any anti-

**No. 5:06CV221-RS/AK**

seizure medication. (R. 113). Dr. Gilani conducted range of motion tests which were normal, except for subjective complaints of pain at the lumbar area. (R. 114).

During a psychological evaluation with Dr. LaBarbera on January 21, 2004, Plaintiff again appeared sedated and sleepy. (R. 115). Plaintiff even fell asleep during the testing at one point. (R. 115). Her memory was flawed, and she was slow on testing, which was attributed to "her degree of sedation." (R. 116). Her diagnosis was Major Depression. (R. 117).

Plaintiff sought treatment for seizure activity from Dr. Banton on April 27, 2004. (R. 219). She also reported depression "due to multiple life stressors." (R. 219). Dr. Banton referred her to a neurologist. Dr. Banton treated her September 2, 2004, and again on May 6, 2005, for back and hand pain, with family difficulties. (R. 265-278). She was treated with medication. Her lumbar spine study (MRI) showed normal hydration, no herniation or bulge, and was otherwise unremarkable, even though she could not finish the study because of back pain. (R. 274-276). X-rays taken on May 6, 2004, of the lumbar spine found no fracture or misalignment. (R. 144).

On June 11, 2004, Plaintiff saw Dr. Lutfi for a neurological evaluation and he obtained a MRI which showed "no acute lesion, minimal small vessel chronic ischemic changes." (R. 226). An EEG showed the presence of "epileptiform discharges in the left temporal region." (R. 230). He placed her on Dilantin and Depakote. (R. 226-238).

Treatment notes from Dr. Saleh from August 16, 2005, show complaints of back pain, seizures, and headaches. (R. 292-320). Plaintiff reported no seizure medication

in eight months with the last seizure four months prior to the visit. (R. 305). A number of studies revealed an abnormal EEG showing mild, chronic neurogenic changes; mild, right median neuropathy at wrist with carpal tunnel syndrome; and mild, chronic L5 lumbar radiculopathy. (R. 313).

Other objective studies include CT scans on May 12, 2003, November 3, 2003, and February 13, 2004, which were "unremarkable." (R. 172, 178, 184). An EEG report on November 12, 2003 was remarkable for "the presence of occasional epileptiform discharges in the form of sharp and wave seen in the left temporal region." (R. 177). MRI of the lumbar area on February 18, 2004, revealed a disc bulge at L4-5 with slight encroachment upon the thecal sac, no sign of disc herniation and facet changes are minimal with ligamentum flavum thickening "mild." (R. 168).

A Physical Residual Functional Assessment on March 2, 2004, assessed her with medium level physical limitations with a limitation on being around hazardous machinery because of her history of seizure. (R. 118-125). A later RFC on July 15, 2004, rated her at a light exertional level. (R. 257-264).

A Mental Residual Functional Capacity Assessment on March 7, 2004, with accompanying Psychiatric Technique Form found her to be suffering from depression which moderately affected her ability to remember and carry out detailed instructions, and to maintain attention and concentration. (R. 126-143). Another MRFC on July 3, 2004, was similar. (R. 239-256).

**F.** **SUMMARY OF THE ADMINISTRATIVE HEARING**

**No. 5:06CV221-RS/AK**

Plaintiff testified that she was born in 1956 and the only work she has done in the last 15 years was help with her husband's business. (R. 324-326). Her current medication regimen is Lortab, Depakote, Topomax, Ultram, Naproxen, and Bencar. (R. 326). Plaintiff states that she has two to four seizures a month. (R. 327). It takes her several hours after a seizure to return to normal functioning. (R. 329). She has a current drivers license, but does not drive because she has not had a car for three years. (R. 330). She has had no recurrence of her colon cancer and has been treated for back pain with injections (three) which provided slight relief. (R. 331). She has also been prescribed a "strap" to wear around her waist to help her when she is moving around. (R. 331-332). The pain in her lower back does not radiate anywhere. (R. 332). The back pain began in June 2004 and her sister reminded her that she was involved in a car accident before then that might have caused the back pain. (R. 332-333).

She is no longer on Xanax or Zoloft. (R. 337). When asked about the side effects from her medication, she said it made her body feel tired and she did not sleep very well. (R. 337-338). She described her daily activities as those things a "stay at home" mother does in a day, picking up around the house, planning dinner, and when asked why she could not work during this time, she responded that it was her back and her seizures that kept her from working. (R. 339). She expressed concern over hurting herself or someone else on the job because of her seizures. (R. 339-340).

The vocational expert testified that Plaintiff's past relevant work was as an all purpose office worker, which was light and unskilled. (R. 343). The hypothetical posed

was an individual limited to sedentary or light work, no repetitive pushing or pulling, no kneeling or crawling, occasional stooping or crouching, no exposure to weather extremes, hazardous machinery, electrical shock or high places, no detailed or complex work, no production standards requiring quotas. (R. 343). The expert replied that she could not perform her past relevant work under these limitations, but there were numerous other jobs existing in the national economy which Plaintiff could perform. (R. 341). A number of these jobs would be eliminated if she were limited to only occasional use of her upper extremities, but she could still do the job duties of a surveillance systems monitor. (R. 345). The ALJ added to the hypothetical a limitation of only six hours a day because of physical or emotional problems, and the expert testified that there would be no jobs available for someone who could not perform a full work day. (R. 345).

### G.    DISCUSSION

　　a)    Pain

Pain and other subjective symptoms are treated by the regulations as symptoms of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." Accord 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged

**No. 5:06CV221-RS/AK**

>pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  "While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself."  Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence."  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).  Standing alone, however, a claimant's testimony of pain is not conclusive evidence of disability.  Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987).  If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be based on substantial evidence.  Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  The failure to articulate adequate reasons for discrediting pain testimony mandates that the testimony be accepted as true as a matter of law.  Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

The ALJ in this case specifically found that the objective medical evidence did not support pain at the level described by Plaintiff and he cited to the examinations and tests which supported this finding.  He also noted that Plaintiff's primary complaints of seizures and back pain appeared to be controlled by medication, and she had

**No. 5:06CV221-RS/AK**

presented herself at a consultative examination as being more limited than she is, which in his opinion supported a less than fully credible finding as to her subjective reports. The ALJ also considered Plaintiff's own testimony about her pain, as well as several RFC's in file that did not consider her pain to be limiting beyond light (and in one case, medium level) work.

A clearly articulated credibility finding with substantial supporting evidence in the record should not be disturbed by a reviewing court. Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986); Sellers v. Barnhart, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002). Consequently, there is no merit to this ground for remand.

b)  Side effects of medication

Although the ALJ is required to consider a claimant's subjective accounts of adverse side effects from medicine, these accounts must be adequately documented by medical evidence contained in the record. Swindle v. Sullivan, 914 F.2d 222, 225 (11th Cir. 1990). As the ALJ found, Plaintiff responded that she was not suffering from side effects when asked by her treating sources nor did she express at the hearing that she was suffering from side effects, such as the lethargy and sleepiness observed at the consultative examination. She complained about her body being tired and having difficulty sleeping. The over sedation observed by Dr. LaBarbera was suspected to be a reaction to Xanax (R. 116), which Plaintiff said she was no longer taking, and as the ALJ noted in his decision, Plaintiff reported no side effects to Dr. Patel just a few months

prior to the consultative examination, and Dr. Patel had prescribed the medication and would presumably be the most logical source to complain to about any side effects. (R. 21). Thus, there is no merit to this ground either.

### c) Vocational expert

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(4). The ALJ may make this determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert. Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004). The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level." Wolfe v. Chater, 86 F.3d at 1078, quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992). See also Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995). "It is only when the claimant can clearly do unlimited types of work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted). Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).

**No. 5:06CV221-RS/AK**

When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her. <u>Phillips</u>, 357 F.3d at 1240. In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of Claimant's impairments. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999).

Plaintiff complains that the expert responded negatively to the hypothetical posed to him, and the ALJ failed to accept his opinion that there were no jobs Plaintiff could perform in response to this hypothetical. Actually, the expert identified several jobs in response to the initial hypothetical posed, but when the ALJ added limitations to upper extremity use this limitation eliminated most of the jobs, except surveillance systems monitor. This upper extremity limitation was based on Plaintiff's carpal tunnel syndrome which the objective testing confirmed was "mild," and which was relieved in part by use of a wrist splint, and which the ALJ found to be non-severe. The ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert. <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1563 (11th Cir. 1985). Thus, this ground, too, fails to persuade the undersigned that this matter should be remanded for either payment of benefits or for further proceedings.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED.**

At Gainesville, Florida, this __**10th**__ day of January, 2008.

**No. 5:06CV221-RS/AK**

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 5:06CV221-RS/AK**